Slip Op. 14-154

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OTTER PRODUCTS, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>     Defendant. | Before: Mark A. Barnett, Judge<br><br>Court No. 14-00328 |

OPINION AND ORDER

[The court denies Plaintiff's Motion for a Preliminary Injunction; dissolves the previously issued temporary restraining order; dismisses the case insofar as Plaintiff asserts jurisdiction under 28 U.S.C. § 1581(h) and (i); denies Defendant's Motion to Partially Dismiss the Amended Complaint as moot; and denies Speculative Product Design, LLC's Motion to Appear as Amicus Curiae.]

Dated: December 23, 2014

*Louis S. Mastriani*, *Munford Page Hall, II*, *Paul M. Bartkowski*, *Beau A. Jackson*, *Dana L. Watts*, Adduci, Mastriani, & Schauberg LLP of Washington, D.C., and *Garret A. Leach, P.C.*, Kirkland & Ellis LLP of Chicago, Illinois, for Plaintiff Otter Products, LLC.

*Joyce R. Branda*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Amy M. Rubin*, Assistant Director, *Justin R. Miller*, Senior Trial Counsel, *Guy Eddon*, Trial Attorney, Civil Division, Department of Justice, Commercial Litigation Branch, International Trade Field Office, of New York, New York, for Defendant United States. Of counsel on the briefs was *Michael W. Heydrich*, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

*Christian E. Samay* and *Robert E. Colletti*, Frommer Lawrence & Haug LLP of New York, New York, for proposed Amicus Curiae or Intervenors Speculative Product Design, LLC.

Barnett, Judge:  Plaintiff, Otter Products, LLC ("Otter"), moves pursuant to USCIT

Rules 7 and 65 for a preliminary injunction enjoining U.S. Customs and Border

Protection ("Customs") from enforcing the General Exclusion Order ("GEO") issued by

the U.S. International Trade Commission ("ITC") in *Certain Cases for Portable Electronic Devices*, Inv. No. 337-TA-861/867, against Otter's Symmetry Series ("Symmetry") products.  (*See generally* Pl.'s Mot. for TRO & Prelim. Inj. ("Pl.'s Mot.") (ECF No. 6).)  For the reasons provided below, the court denies Otter's motion and dissolves the previously issued temporary restraining order ("TRO").

BACKGROUND

On September 6, 2012, and December 26, 2012, Speculative Product Design, LLC ("Speck"), owner of U.S. Patent No. 8,204,561 ("the '561 Patent"), filed complaints with the ITC, pursuant to section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 (2012),[1] alleging the importation of products that violated its patent.  *Certain Cases for Portable Electronic Devices*, 78 Fed. Reg. 6834-02 (ITC Jan. 31, 2013) (Institution of Investigation); *Certain Cases for Portable Electronic Devices*, 77 Fed. Reg. 68,828 (ITC Nov. 16, 2012) (Institution of Investigation).  The ITC consolidated the complaints into one investigation on January 31, 2013.  (Pl.'s Mot. Ex. 1 at 2.)  Speck did not name Otter as a respondent in either complaint.  *See Certain Cases for Portable Electronic Devices*, 78 Fed. Reg. at 6835; *Certain Cases for Portable Electronic Devices*, 77 Fed. Reg. at 68,829.  Over the course of the investigation, numerous respondents were found in default, while all active respondents were terminated from the investigation.  (Pl.'s Mot. Ex. 1 at 2.)  On February 21, 2014, an Administrative Law Judge ("ALJ") issued a final initial determination and recommended the issuance of a

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

GEO and imposition of a bond of 100 percent of entered value during the period of

Presidential review.  (Pl.'s Mot. Ex. 1 at 2.)  The ALJ's determination did not address

whether the '561 Patent was invalid.  On April 11, 2014, the ITC determined not to

review the ALJ's finding.  *Certain Cases for Portable Electronic Devices*, 79 Fed. Reg.

20,228 (ITC Apr. 11, 2014) (Determination Not to Review Initial Determination).

On June 20, 2014, the ITC issued a GEO, which covers claims 4, 5, 9, and 11 of

the '561 Patent.  (Pl.'s Mot. Ex. 1 at 4-7 (GEO).)  It states, in relevant part:

> Cases for portable electronic devices covered by one or more of claims 4,
> 5, 9, and 11 of the '561 patent are excluded from entry into the United States
> for consumption, entry for consumption from a foreign-trade zone, or
> withdrawal from a warehouse for consumption, for the remaining term of the
> patent, except under license of the patent owner or as provided by law.

(Pl.'s Mot. Ex. 1 at 5.)  The GEO became final on August 20, 2014.  *See* 19 U.S.C.

§ 1337(j).

In January 2014, six months before the ITC issued the GEO, Otter announced its

Symmetry Series cases, and by March 3, 2014, the products were available for

purchase throughout the United States.  (*See* Pl.'s Mot. 4, Ex. 4.)  On August 15, 2014,

Customs Port of Long Beach alerted Otter that Customs was examining whether the

GEO encompassed the Symmetry cases.  (Pl.'s Mot. 5.)  Otter soon thereafter took the

following steps:

- In late August 2014, Otter met with Customs representatives to explain why it
  believed that the Symmetry cases did not infringe the '561 Patent and, on
  September 2, 2014, filed a Request for Internal Advice with Customs.  (Pl.'s Mot.
  Ex. 6.)

- On September 3, 2014, Otter filed a Petition for *Inter Partes* Review of the '561 Patent with the U.S. Patent and Trademark Office, which is still pending.  (Pl.'s Mot. Ex. 7.)

- On September 4, 2014, Otter filed with the ITC a Request for an Advisory Opinion that Otter's products fall outside the scope of the GEO.[2]  (Pl.'s Mot. Ex. 8.)

- On September 16, 2014, Otter filed a motion with the ITC to stay enforcement of the GEO with respect to Otter's Symmetry cases.  (Pl.'s Mot. Ex. 9.)  The court is not aware of any action having been taken on that motion.

- On September 17, 2014, Otter appealed the final determination of the ITC, *Certain Cases for Portable Electronic Devices*, 79 Fed. Reg. 20,228, which led to the issuance of the GEO, to the Federal Circuit.  *See generally Otter Prods., LLC v. ITC*, No. 14-1840 (Fed. Cir. filed Sept. 17, 2014).

On September 19, 2014, Customs issued Notices of Redelivery, directing Otter to redeliver imported Symmetry cases covered by sixteen separate entries.  (Pl.'s Mot. Ex. 11.)  On September 24, 2014, Otter moved the Federal Circuit to stay the enforcement of the GEO as to imports of Otter's products.  (Pl.'s Mot. Ex. 12.)  That

---

[2] On October 22, 2014, the ITC determined to institute an advisory proceeding to determine whether Otter's Symmetry Series products infringe one or more of claims 4, 5, 9, and 11 of the '561 Patent.  *Certain Cases for Portable Electronic Devices*, 79 Fed. Reg. 64,214 (ITC Oct. 28, 2014) (Institution of Advisory Opinion Proceeding).  Two days later, Plaintiff filed a motion to withdraw its request for an advisory opinion, which the ITC granted on November 7, 2014.  *Certain Cases for Portable Electronic Devices*, 79 Fed. Reg. 68,299 (ITC Nov. 7, 2014) (Termination of Advisory Opinion Proceeding).

same day, Otter filed protests of Customs' Notices of Redelivery.  (Pl.'s Mot. Ex. 14.)

On September 26, 2014, before the ITC had filed a responsive brief at the Federal

Circuit to Otter's motion to stay, Customs issued a ruling, in response to Otter's

September 2, 2014, Request for Internal Advice.  In the ruling, Customs stated that,

pursuant to 19 C.F.R. § 177.7,[3] it would not respond to Otter's Internal Advice Request

and would not enforce the GEO against Otter because Otter's appeal, *Otter Prods.,*

*LLC*, No. 14-1840 (Fed. Cir. filed Sept. 17, 2014), was pending before the Federal

Circuit and "concerns the claim construction of the '561 patent and whether [cases for]

portable electronic devices imported by [Otter] are covered by the claims of the '561

patent such that they are subject to exclusion from entry."  HQ H257012 (Sept. 26,

2014) ("the 012 Ruling").  On September 29, 2014, Customs canceled the Notices of

Redelivery and, the following day, at Customs' request, Otter withdrew its protest.  (Pl.'s

Mot. Exs. 16-17.)

        In opposition to Otter's motion to stay before the Federal Circuit, the ITC cited the

012 Ruling and argued that Otter faced no imminent harm or, in the alternative, that the

motion was moot.  (Pl.'s Mot. Ex. 18.)  On October 20, 2014, the Federal Circuit denied

Otter's motion to stay, simply stating that Otter "failed to carry its burden in seeking a

stay."  *Otter Prods., LLC*, No. 14-1840 (Fed. Cir. Oct. 20, 2014).

---

[3] Section 177.7 states, in relevant part, that "[n]o ruling letter will be issued with respect to any issue which is pending before the United States Court of International Trade, the United States Court of Appeals for the Federal Circuit, or any court of appeal therefrom."  19 C.F.R. § 177.7(b).

That same day, Speck requested a ruling from Customs as to whether Otter's

Symmetry cases are subject to exclusion from entry pursuant to the GEO.

Notwithstanding its decision in the 012 Ruling, this time Customs found that it was "not

precluded by 19 C.F.R. § 177.7(b) from ruling on the instant [Otter] 'Symmetry'

electronic device cases because the issue of whether these products infringe the '561

patent is not before the CAFC" in Otter's appeal.  HQ H258492 (Nov. 4, 2014) ("the 492

Ruling").  After determining that Otter's Symmetry products infringed certain claims in

the '561 Patent, Customs ruled that Otter's Symmetry products fell "within the scope of

the ITC's general exclusion order . . . and may not be entered for consumption into the

United States."  *Id.*  Customs subsequently issued a new series of Notices of

Redelivery[4] to Otter covering twenty separate entries of Symmetry portable electronic

device cases on November 6, 2014.  (Pl.'s Mot. Ex. 23.)

Otter filed a protest against the Notices of Redelivery on November 7, 2014.

(Pl.'s Mot. Ex. 24.)  In its protest, Otter presented three arguments:  (1) Otter's

Symmetry cases are not covered by the GEO because they do not infringe the relevant

claims of the '561 Patent; (2) the claims of the '561 Patent listed in the GEO are invalid;

and (3) Customs' ruling is inappropriate because infringement and the validity of the

'561 Patent are currently at issue in Otter's appeal before the Federal Circuit.  (Pl.'s

Mot. Ex. 24 at 7-9.)  That same day, Otter filed another motion to stay before the

---

[4] The Notices of Redelivery do not expressly indicate that Customs issued them in
reliance on the 492 Ruling.  (*See generally* Pl.'s Mot. Ex. 23.)

Federal Circuit, which the court construed as a motion for reconsideration and denied

on November 11, 2014.  *Otter Prods., LLC*, No. 14-1840 (Fed. Cir. Nov. 11, 2014).

On November 10, 2014, Otter requested that Customs immediately withdraw the

492 Ruling and filed a Request for Reconsideration of the ruling on November 14, 2014.

(Pl.'s Mot. Exs. 25-26.)  Customs affirmed the ruling on December 10, 2014.  HQ

H259071 (Dec. 10, 2014) ("the 071 Ruling").  In the 071 Ruling, Customs found that 19

C.F.R. § 177.7(b) did not preclude Customs from issuing a ruling because Customs'

review of the Federal Circuit docket and its view of the "statutory interplay and relevant

precedent does not establish that the court will adjudicate the infringement issue during

the appeal or whether [Otter] even has standing to raise this issue or bring the appeal."

*Id.* at 9.  Moreover, Customs determined that it did not possess authority to determine

the validity of the '561 Patent.  *Id.* at 15.  Finally, Customs limited its infringement

analysis to Otter's Symmetry cases for iPhones, even though it has excluded and

demanded redelivery of all Symmetry cases.[5]  *See id.*

Otter's protest was deemed denied, pursuant to 19 CFR § 174.21(b), on

December 8, 2014, and Otter filed suit to challenge the denied protest on December 10,

2014.  Concurrent with the summons and complaint, Otter filed motions for a TRO and

preliminary injunction.  (ECF Nos. 1, 4-6.)  On December 12, 2014, the court conducted

---

[5] At the hearing, neither party was able to state definitively whether non-iPhone cases
were included in the twenty entries subject to the Notices of Redelivery identified in the
underlying protest.  Based upon a review of the entry papers forwarded to the court, the
court has confirmed that the entries in question do include quantities of non-iPhone
cases.  *See, e.g.*, Entry No. 799-6650944-4.

a telephonic hearing on the TRO, which the court granted that day.  (ECF No. 19, 21.)

In the TRO, the court ordered Customs to suspend enforcement of the Notices of

Redelivery subject to the protest at issue in this matter.  (ECF No. 21 at 11.)  On

December 14, 2014, Otter filed a motion to clarify, in which it asked the court to alter the

TRO to prohibit Customs from excluding future imports of Otter's Symmetry cases.

(*See generally* Pl.'s Mot. Clarify (ECF No. 23).)  The court denied the motion.  (ECF No.

24.)

On December 15, 2014, Otter filed a First Amended Complaint, in which it

invoked the court's subject matter jurisdiction under 28 U.S.C. § 1581(h) and (i) (2012),[6]

in addition to subsection (a).  (Am. Compl. ¶¶ 3-4.)  On December 16, 2014, Speck filed

a motion to appear as amicus curiae, (ECF No. 26), and Defendant filed a motion to

partially dismiss the First Amended Complaint for lack of subject matter jurisdiction,

(ECF No. 29).  The court conducted a hearing on Otter's motion for a preliminary

injunction on December 17, 2014.  (ECF No. 31.)

## SUBJECT MATTER JURISDICTION

Before addressing the merits of Otter's motion for a preliminary injunction, the

court must determine the extent of its subject matter jurisdiction over the case.  *See*

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  A court has "an independent

obligation to determine whether subject-matter jurisdiction exists, even in the absence

of a challenge from any party," *id.*; *see also Ford Motor Co. v. United States*, 38 CIT __,

---

[6] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

__, 992 F. Supp. 2d 1346, 1354 (2014), and "the plaintiff bears the burden of demonstrating that jurisdiction exists," *Ford*, 38 CIT at __, 992 F. Supp. 2d at 1354 (citing *E & S Express, Inc. v. United States*, 37 CIT __, __, 938 F. Supp. 2d 1316, 1320 (2013)).

It is without dispute that the court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1581(a).  Moreover, for purposes of considering the preliminary injunction issues, it is not necessary to determine whether the court has jurisdiction pursuant to § 1581(h) because that subsection provides only declaratory relief.  28 U.S.C. § 2643(c)(4); *Manufacture de Machines du Haut-Rhin v. Von Raab*, 6 CIT 60, 64 n.5, 569 F. Supp. 2d 877, 882 n.5 (1983).[7]  The court therefore turns to whether it may exercise subject matter jurisdiction pursuant to § 1581(i).

Subject matter jurisdiction under § 1581(i), the court's residual jurisdiction provision, "may only be invoked when another subsection of § 1581 is unavailable or the remedy provided by another subsection is 'manifestly inadequate.'" *Am. Frozen Food Inst., Inc. v. United States*, 18 CIT 565, 569 n.9, 855 F. Supp. 388, 392 n.9 (1994) (citing *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1557 (Fed. Cir. 1988); *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987)).  "Such residual jurisdiction is available if Congress has not defined another avenue for judicial review or if Congress has not precluded it entirely." *Techsnabexport, Ltd. v. United States*, 16 CIT

---

[7]  As discussed *infra*, the court's resolution of the irreparable harm factor for purposes of Otter's preliminary injunction motion, and Otter's reliance on the same evidence to establish irreparable harm for its assertion of (h) jurisdiction, allows the court to resolve (h) jurisdiction within this opinion.

420, 423, 795 F. Supp. 428, 434 (1992) (citing *Macmillan Bloedel Ltd. v. United States*,

16 CIT 331, 332 (1992)).  Although neither Congress nor the courts have precisely

defined manifest inadequacy, "'mere allegations of financial harm, or assertions that an

agency failed to follow a statute, do not make the remedy established by Congress

manifestly inadequate.'"  *Gov't of the PRC v. United States*, 31 CIT 451, 459, 483 F.

Supp. 2d 1274, 1281 (2007) (quotation marks omitted) (quoting *Int'l Custom Prods., Inc.

v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006)).

 Otter asserts that the remedies available under other subsections of § 1581 are

manifestly inadequate because, with jurisdiction restricted to § 1581(a), Otter will have

to repeatedly enter Symmetry cases "in contradiction of Ruling 071, wait for [Customs]

to exclude those cases, protest the exclusion, wait for the protest to be denied or

'deemed denied' 30 days later, and then file a Summons on each such protest as it

must do to meet the jurisdictional requirements of 28 U.S.C. § 1581(a)."  (Pl.'s

Supplemental Submission in Supp. of Mot. for Prelim. Inj. ("Pl.'s Supplement") 8 (ECF

No. 27).)  Otter goes so far as to characterize Customs' anticipated actions in this

scenario as "preordained outcomes" that warrant (i) jurisdiction.  (Pl.'s Supplement 8-9.)

Otter finally contends that the court has jurisdiction under § 1581(i) because Otter "is

entitled to a preliminary injunction . . . , and such a remedy is not available under 28

U.S.C. § 1581(h)."  (Pl.'s Supplement 9.)

 Otter has not demonstrated that the court has subject matter jurisdiction under

subsection (i).  That the legal regime established by Congress may require Otter to

attempt to enter its goods, suffer an exclusion, protest that exclusion, and then appeal

Customs' denial of the protest, pursuant to § 1581(a), does not make the remedies

available under subsection (a) manifestly inadequate.  Case law has long held that

"section 1581(i) cannot be used to circumvent the procedures set forth by section

1581(a)."  *Manufacture de Machines du Haut-Rhin*, 6 CIT at 65, 569 F. Supp. at 882

(citing *United States v. Uniroyal*, 687 F.2d 467 (C.C.P.A. 1982)); *accord Connor v.*

*United States*, 24 CIT 195, 200 (2000); *see also Inner Secrets/Secretly Yours, Inc. v.*

*United States*, 18 CIT 1028, 1035, 869 F. Supp. 959, 965-66 (1994) ("Congress did not

intend the Court of International Trade to have jurisdiction over appeals concerning

completed transactions when the appellant had failed to utilize an avenue for effective

protest before the Customs Service.") (citation and quotation marks omitted).  That Otter

may suffer "delays inherent in the protest procedures do[es] not render these

procedures manifestly inadequate."  *Inner Secrets/Secretly Yours*, 18 CIT at 1036, 869

F. Supp. at 966.

Otter's argument that Customs' actions amount to "preordained outcomes,"

which render the protest process futile, also misses the mark.  Although the courts have

recognized that, in certain circumstances, the § 1581(a) protest process may be futile,

as leading to a series of preordained rulings, these scenarios have involved Customs

regulations which bound the agency and "'unmistakably' indicated how it would

determine the issue in dispute."  *Int'l Custom Prods.*, 467 F.3d at 1328; *accord Kairali*

*Decan, Inc. v. United States*, 789 F. Supp. 2d 1372, 1379 (2011).  There is no such

regulation constraining Customs' discretion in this case.  The court also is not

persuaded by Otter's argument that jurisdiction exists under § 1581(i) because Otter

cannot secure a preliminary injunction under subsection (h).  As previously noted, the

court has subject matter jurisdiction over this matter pursuant to § 1581(a).  Under this

subsection, Otter may obtain a preliminary injunction and, in fact, the court has granted

Otter a TRO.  That any preliminary injunction that the court may issue will be limited in

effect to the entries subject to Otter's denied protest, *Corning Gilbert Inc. v. United

States*, 37 CIT __, __, 896 F. Supp. 2d 1281, 1297 n.4 (2013), and not have the breadth

Otter would prefer, does not render the remedies available under § 1581(a) and (h)

manifestly inadequate.  Moreover, Otter may obtain declaratory relief following the

court's review of the merits, and, consistent with USCIT Rule 3(g)(3), such review will

be conducted on an expedited basis.

Otter has failed to demonstrate that the remedies available to it under 28 U.S.C.

§ 1581(a) are manifestly inadequate.  Consequently, the court finds that it does not

have subject matter jurisdiction over this case pursuant to § 1581(i).  The court

therefore dismisses the First Amended Complaint to the extent that it relies on

subsection (i) as a basis for subject matter jurisdiction.  The court now turns to whether

Otter has met the requirements for obtaining a preliminary injunction.

LEGAL STANDARD FOR PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right."

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  To obtain a preliminary

injunction, a party must demonstrate "(1) that it will be immediately and irreparably

injured; (2) that there is a likelihood of success on the merits; (3) that the public interest

would be better served by the relief requested; and (4) that the balance of hardship on

all the parties favors the [movant]." *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d

1375, 1378 (Fed. Cir. 2009) (citations omitted); *accord Kwo Lee, Inc. v. United States*,

38 CIT __, __, 2014 WL 5369391, at *2 (Oct. 16, 2014).  Although "[n]o one factor is

dispositive," the likelihood of success and irreparable harm factors are "'[c]entral to the

movant's burden.'"  *Kwo Lee*, 38 CIT at __, 2014 WL 5369391, at *2 (second brackets

in original) (citing *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993))

(quoting *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1219 (Fed.

Cir. 1996)).  "The court evaluates a request for a preliminary injunction on a 'sliding

scale,' where 'the more the balance of irreparable harm inclines in the [movant]'s favor,

the smaller the likelihood of prevailing on the merits [it] need show in order to get the

injunction.'"  *Id.* (quoting *Qingdao Taifa Grp.*, 581 F.3d at 1378-79).

DISCUSSION

### I.     Irreparable Harm

        To satisfy the standard to obtain a preliminary injunction, Otter must show that it

faces an "immediate and viable" threat of irreparable harm.  *Kwo Lee*, 38 CIT at __,

2014 WL 5369391, at *2 (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809

(Fed. Cir. 1983)).  Harm is irreparable when "'no damages payment, however great,'

can address it."  *Id.* (citations omitted) (quoting *Celsis In Vitro, Inc. v. CellzDirect, Inc.*,

664 F.3d 922, 930 (Fed. Cir. 2012)).  Generally, financial loss alone is not irreparable.

*Id.* at *3 (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).  However, the ability to

calculate a financial loss may not preclude a finding of irreparable harm, because

accompanying harm from "'[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities'" may be irreparable.  *Id.* (citations omitted).

Critically, irreparable harm may not be speculative.  *See Am. Inst. for Imported Steel, Inc. v. United States*, 8 CIT 314, 318, 600 F. Supp. 204, 209 (1984).  "It is not enough to establish 'a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown.'"  *Shree Rama Enters. v. United States*, 21 CIT 1165, 1167, 983 F. Supp. 192, 194-95 (1997) (quoting *Zenith Radio*, 710 F.2d at 809).  The threat of irreparable harm must be "demonstrated by probative evidence," *Am. Inst. for Imported Steel*, 8 CIT at 318, 600 F. Supp. at 209 (citation and quotation marks omitted), and "cannot be determined by surmise," *Elkem Metals Co. v. United States*, 25 CIT 186, 192, 135 F. Supp. 2d 1324, 1331 (2001) (citation omitted); *see also Techsnabexport*, 16 CIT at 428, 795 F. Supp. at 437 ("The court may not grant preliminary relief based upon unsupported allegations. . . . Allegations of harm to potential future business relations are too speculative to constitute irreparable harm."). The court must deny a preliminary injunction where the plaintiff fails to present evidence that the alleged injuries are likely to occur.  *See Nat'l Hand Tool Corp. v. United States*, 14 CIT 61, 66 (1990).

Otter has proffered the following evidence to support its claim that it faces irreparable harm absent a preliminary injunction.  Otter has asserted that, since the market debut of the Symmetry cases, they have continuously grown to become a significant portion of its sales, producing millions of dollars in revenue in a highly competitive, cyclical market.  (Kreutzfeldt Decl. ¶¶ 4-8, Nov. 25, 2014.)  Without a

preliminary injunction, Otter claims it would lose out on sales during the increased

demand of the holiday season, which it will not be able to recover once the holiday

season is over.  Moreover, Otter has stated that it would not be able to recover

monetary damages in this suit if the exclusion of its products is ultimately determined to

be unlawful.  In addition, Otter has expended great efforts to establish relationships with

numerous "big box" retailers and other large customers.  (*See* Lecy Decl. ¶¶ 18, 22-23,

Dec. 1, 2014.)  It asserts that the maintenance and strength of these relationships

depends significantly on Otter's "strong reputation of durability and dependability."

(Lecy Decl. ¶ 23.)  Since the GEO has come into force, Otter has received multiple

inquiries and statements of concern from some of these customers about the availability

of Symmetry cases, particularly during the upcoming holiday season, and these

customers have suggested that they may need to source cases from Otter's competitors

if the GEO remains in place.  (Lecy Decl. ¶¶ 18-21, 25.)  Otter also fears that the

inability to provide its customers with its current products in a timely fashion will tarnish

its reputation as a reliable vendor and damage its relationships with its customers.

(Lecy Decl. ¶¶ 24-25.)  Without a preliminary injunction, Otter insists that it also may

lose market share, as customers purchase its competitors' products with their purchase

of the recent release of the latest phone models.  (Lecy Decl. ¶¶ 30, 33.)

       Otter's evidence, however, fails to account for the breadth of injunctive relief

available under § 1581(a).  The scope of the court's subject matter jurisdiction in (a)

cases is limited to those entries subject to the challenged protest, *Corning Gilbert*, 37

CIT at __ n.4, 896 F. Supp. 2d at 1297 n.4; *see also Int'l Custom Prods.*, 467 F.3d at

1327 (noting that § 1581(a) does not offer prospective relief).  In this case, Otter

challenges Customs' deemed denial of a protest against Notices of Redelivery covering

twenty specific entries.  (Am. Compl. ¶¶ 1-2, 5-7.)  The court therefore may provide

injunctive relief only with respect to those twenty entries.  After the court issued the

TRO, Otter provided additional information in its motion for clarification of the TRO.  In

particular, Otter indicated that it had not redelivered the entries in question and, in fact,

had already informed Customs that it had no intention of redelivering the entries in

question because they had already been distributed to Otter's customers.  (Pl.'s Mot.

Clarify at 3-4.)  Otter has further acknowledged that it is Customs' policy "not to assess

liquidated damages for failure to redeliver goods that are subject to a protest or civil

action until after a final decision on that protest or in that civil action."  (Pl.'s Mot. Clarify

at 2, 5.)  Therefore, Otter has effectively conceded that it will not suffer irreparable harm

in the absence of a preliminary injunction enjoining the enforcement of the twenty

Notices of Redelivery.

Otter has failed to demonstrate that it will suffer irreparable harm absent a

preliminary injunction and, therefore, the court need not address the three remaining

factors prior to denying Otter's motion.  *See Qingdao Taifa Grp.*, 581 F.3d at 1378

(citations omitted).  Moreover, based on this additional information demonstrating an

absence of irreparable harm, the court hereby dissolves the TRO of December 12,

2014.

### SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1581(h)

Otter's failure to demonstrate irreparable harm in its motion for a preliminary

injunction raises questions about its invocation of subject matter jurisdiction under 28

U.S.C. § 1581(h).  Review under this subsection is available "only under exceptional

circumstances."  *Connor*, 24 CIT at 199 (citation omitted).  Subsection (h) states, in

relevant part, that:

> The Court of International Trade shall have exclusive jurisdiction of any civil
> action commenced to review, prior to the importation of the goods involved,
> a ruling issued by the Secretary of the Treasury, or a refusal to issue or
> change such a ruling, relating to . . . restricted merchandise, entry
> requirements, . . . or similar matters, but only if the party commencing the
> civil action demonstrates to the court that he would be irreparably harmed
> unless given an opportunity to obtain judicial review prior to such
> importation.

28 U.S.C. § 1581(h).  A plaintiff must fulfill four requirements to establish jurisdiction

under subsection (h):  "1) review must be sought prior to importation; 2) review sought

must be for a ruling; 3) the ruling must relate to certain subject matter; and 4) the

importer must show that irreparable harm will result unless judicial review prior to

importation is obtained."  *Am. Frozen Food Inst.*, 18 CIT at 569, 855 F. Supp. at 393

(citation omitted).  "[T]he standard for proving irreparable harm [in a § 1581(h) case] is

essentially identical to that used to determine irreparable injury in cases where

injunctive relief is sought."  *Connor*, 24 CIT at 199 (second brackets in original) (citation

and quotation marks omitted).  The moving party must demonstrate, by "clear and

convincing evidence," that "there is an immediate threat that the harm *will* occur, not just

an immediate threat that the harm *could* occur," i.e., "that he would be irreparably

harmed unless given an opportunity to obtain judicial review prior to importation." *Id.* at

196, 198 (first emphasis added) (citations omitted); *accord* 28 U.S.C. § 2639(b).

Although the standard for proving irreparable harm is the same as in the case of

the preliminary injunction, in this case, the entries at issue arguably differ between the

court's analysis pursuant to its jurisdiction under § 1581(a) and Plaintiff's allegation of

jurisdiction under § 1581(h).  As discussed above, the irreparable harm considered

under the court's (a) jurisdiction related to the twenty entries covered by the Notices of

Redelivery.  For purposes of the court's § 1581(h) jurisdiction, the court must concern

itself with any irreparable harm, demonstrated by clear and convincing evidence,

resulting from the Customs rulings that would exclude future entries of Otter's Symmetry

cases.

Notwithstanding these differences, Otter's counsel stated that the evidence it

provided to demonstrate irreparable harm in its preliminary injunction motion was the

same evidence it proffered to support its claim for § 1581(h) jurisdiction.  During the

hearing on Otter's motion for a preliminary injunction, the court reminded all parties of

the court's need to resolve jurisdictional matters as a threshold issue and, among other

things, inquired as to Otter's intent to provide clear and convincing evidence of

irreparable harm specifically for purposes of establishing jurisdiction pursuant to

§ 1581(h).  Otter declined to provide any additional evidence or witness testimony to

support its jurisdictional claim under § 1581(h), instead choosing to rest on its submitted

papers, and, at no time, did Otter request that the court defer resolving the jurisdictional

issue pending receipt of additional evidence.  (Mot. Hr'g 10:32-:35, Dec. 17, 2014.)

Restated briefly, by means of the declarations, Otter asserts that it will lose out on sales during the increased demand of the holiday season, which it will not be able to recover once the holiday season is over; it will not be able to recover monetary damages if the exclusion of its products is ultimately determined to be unlawful; its relationships with its customers will erode, as will its reputation of durability and dependability; and it may lose market share, as customers purchase its competitors' products in conjunction with their purchase of the recent release of the latest phone models.  (Lecy Decl. ¶¶ 18-25, 30, 33.)

Otter has not demonstrated by clear and convincing evidence that it faces immediate irreparable harm absent judicial review prior to the Symmetry cases' importation.  Otter's contention that it is imperative to release new cell phone case designs soon after a new cell phone model's launch is not supported by the evidence before the court.  Otter's Symmetry cases are designed for, *inter alia*, the iPhone 5s and 5c, which debuted in September 2013.  However, the Symmetry cases at issue here, including those for the iPhone 5s and 5c, were not released until six months later, on March 3, 2014.  (Lecy Decl. ¶¶ 10, 28; *see also* Pl.'s Mot. 4.)  Although the new Symmetry models went on sale six months after the release of the cell phone models, Otter reported a significant increase in sales, which then subsided to pre-launch levels the following month.  (Lecy Decl. ¶ 28.)  Consequently, the evidence suggests that delayed availability of the Symmetry cases may only delay when Otter will experience a boost in sales associated with the new product.

Otter also has not presented clear and convincing evidence that it will suffer

*immediate* irreparable harm during the holiday season due to the application of the GEO

to its products.  The instant action covers twenty entries of Symmetry series cases

which Otter entered throughout October 2014.  Otter has informed Customs that it will

not redeliver the merchandise covered by these entries.  In its motion asking the court

to clarify its TRO, Otter also indicated that there are, in fact, some ninety-one entries of

Symmetry cases (presumably inclusive of the twenty entries at issue in this case) for

which Customs has issued Notices of Redelivery and for which Otter has informed

Customs that it will not redeliver the merchandise.  (Pl.'s Mot. Clarify 5.)  Moreover, the

record makes it clear that Otter was importing Symmetry cases throughout the period

between their introduction and early October 2014.  At no point, however, has Otter

indicated the extent of its U.S. inventory of the Symmetry cases, the extent to which its

customers have established an inventory of these particular cases, or at what point the

application of the GEO to Otter's imports of Symmetry cases will begin to impact Otter's

ability to meet any customer obligations.

Absent information on these issues, the court cannot discern to what degree the

eight months of imports may cover the number of units that Otter predicts it will sell

during the last quarter of 2014.  (*See* Kreutzfeldt Decl. ¶ 8).  The court also cannot

discern to what degree the ninety-one entries that Otter subsequently brought into the

United States, now subject to Notices of Redelivery with which Otter will not comply,

(*see* Pl.'s Mot. Clarify 5; Pl.'s Mot. Ex. 23), will enable it to meet its predicted sales.

Otter also has not shown that it faces immediate damage to its relationships with its

customers, including damage to its reputation and loss of floor space, and to its market

share.  Otter has not produced any of the contracts that it has with its customers nor

even described their contents; rather, it has made conclusory allegations, based mostly

on conjecture, that Customs' actions will cause it harm.  (*See, e.g.*, Lecy Decl. ¶¶ 11-14,

16-25, 33-35.)  Moreover, Otter sells other cell phone cases, designed for the latest cell

phone models, which could be expected to buffer any financial or market share losses

that Otter might face.  (Def.'s Opp'n (ECF No. 28) 29; *see* Lecy Decl. ¶ 4.)  Because

Otter has not shown, by clear and convincing evidence, that it faces immediate and

irreparable harm, the court cannot exercise subject matter jurisdiction over this matter

pursuant to § 1581(h).  *See Am. Frozen Food Inst.*, 18 CIT at 571, 855 F. Supp. at 394.

The court therefore dismisses the First Amended Complaint to the extent that it relies on

this subsection as a basis of jurisdiction.[8]

---

[8] Even if Otter had demonstrated irreparable harm, the court would have to determine, among other things, whether jurisdiction under 1581(h) is, nevertheless, lacking because Otter is not seeking review "prior to importation."  Subsection (h) applies only to "prospective entries."  *Heartland By-Prods., Inc. v. United States*, 26 CIT 268, 280-81, 223 F. Supp. 2d 1317, 1330-31 (2002); *accord Inner Secrets/Secretly Yours*, 18 CIT at 1032, 869 F. Supp. at 963 ("[J]udicial review pursuant to 28 U.S.C. § 1581(h) is available only for prospective transactions. . . . transactions which are not already pending before a Customs Service office by reason of arrival, entry, or otherwise.") (citing *Am. Air Parcel Forwarding Co. v. United States*, 5 CIT 8, 557 F. Supp. 605 (1983), *aff'd*, 718 F.2d 1546 (Fed. Cir. 1983); *Dennison Mfg. Co. v. United States*, 12 CIT 1, 3, 678 F. Supp. 894, 897 (1988); 19 C.F.R. § 177.1(a) (defining "prospective transactions")).  The imports covered by the protest at issue in this case are not prospective entries, (*see* Am. Compl. ¶¶ 1-2, 4, 11, 16), and, therefore, are not subject to review under subsection (h).  *Cummins Inc. v. United States*, 29 CIT 525, 530 n.10, 377 F. Supp. 2d 1365, 1370 n.10 (2005) (holding that action under § 1581(h) seeking pre-importation review of Customs ruling was moot where plaintiff instituted action under § 1581(a) seeking review of denied protest related to test shipment of products at issue) ("Because Plaintiff actually imported the test shipment of the finished crankshafts,

### DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

On December 16, 2014, Defendant filed a partial motion to dismiss Plaintiff's

First Amended Complaint for lack of subject matter jurisdiction under §§ 1581(h) and (i).

(ECF No. 29.)  As discussed above, in keeping with the need to resolve its jurisdictional

authority as a threshold matter, the court has determined that it lacks jurisdiction to

consider Otter's claims pursuant to §§ 1581(h) and (i).  Consequently, Defendant's

partial motion to dismiss is moot.

### SPECK'S MOTION TO APPEAR AS AMICUS CURIAE

On December 16, 2014, Speck, owner of the '561 Patent underlying the ITC's

GEO in this case, filed a motion, pursuant to USCIT Rules 7 and 76, to appear as

amicus curiae.  (ECF No. 26.)  Based upon the court's reading of Speck's motion, it is

clear to the court that Speck desires a role greater than that of an amicus curiae.  To

that end, Speck effectively seeks to become a defendant-intervenor in the case and

advocate for its own benefit.  (ECF No. 26 at 2-3.)  The court is statutorily prohibited

from permitting parties to intervene in § 1581(a) cases.  28 U.S.C. § 2631(j)(1)(A);

*accord Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1357 (Fed. Cir. 2006);

*Corning Gilbert*, No. 11-511 (CIT June 14, 2012) (order denying motion for leave to

appear as amicus curiae).  The court therefore denies the motion.

---

the Court finds [Plaintiff's] § 1581(h) action fails to present a live controversy and is
therefore moot.  Accordingly, that portion of the consolidated case is dismissed.").  In
providing jurisdiction pursuant to § 1581(h), Congress did not intend for subsection (h)
to replace subject matter jurisdiction under subsection (a).  *Heartland By-Prods.*, 26 CIT
at 274, 223 F. Supp. 2d at 1325.

### CONCLUSION

For the reasons provided above, the court

DENIES Plaintiff's motion for a preliminary injunction;

ORDERS the TRO of December 12, 2014, dissolved;

DISMISSES in part the Amended Complaint to the extent that it invokes subject matter jurisdiction pursuant to 28 U.S.C. § 1581(h) and (i);

DENIES Defendant's motion to partially dismiss the Amended Complaint as moot; and

DENIES Speculative Product Design, LLC's motion to appear as amicus curiae.

Parties are hereby advised that, in early January 2015, the court will set a time for a telephonic conference with the parties, during which it will establish an expedited briefing schedule on the merits.


                                              /s/     Mark A. Barnett___
                                              Mark A. Barnett. Judge

Dated: December 23, 2014
         New York, New York